# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| QUINCY SIMMS,<br><br>    Plaintiff,<br><br>    v.<br><br>M. CABRERA,<br><br>    Defendant. | Case No. 1:12-cv-01904-LJO-SKO (PC)<br><br>FINDINGS AND RECOMMENDATION THAT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT BE GRANTED<br><br>(Doc. 66)<br><br>THIRTY DAY OBJECTION DEADLINE |

## I. INTRODUCTION

Plaintiff Quincy Simms, a state prisoner proceeding *pro se* and *in forma pauperis*, filed this civil rights action pursuant to 42 U.S.C. § 1983 on November 21, 2012. This action is proceeding on Plaintiff's amended complaint against Defendant M. Cabrera for violation of the Eight Amendment. (Doc. 7 (Amended Complaint).)

On September 9, 2015, Defendant filed a motion for summary judgment[1] pursuant to Federal Rule of Civil Procedure 56, contending Plaintiff failed to establish an Eight Amendment violation. (Doc. 66.) Plaintiff filed his opposition on October 19, 2015, and Defendant filed his reply on October 26, 2015. (Docs. 70; 71.) Defendant's motion for summary judgment was submitted on the record without oral argument pursuant to Local Rule 230(*l*).

---

[1] Concurrently with service of his motion for summary judgment, Defendant served Plaintiff with the requisite notice of the requirements for opposing the motion. *Woods v. Carey*, 684 F.3d 934, 939-41 (9th Cir. 2012); *Rand v. Rowland*, 154 F.3d 952, 960-61 (9th Cir. 1998). (*See* Doc. 66-2 (*Rand* warning).)

For the reasons that follow, it is RECOMMENDED that Defendant's motion be GRANTED on the merits.

## II. BACKGROUND

### A. Factual Background

Plaintiff is a state prisoner who first entered the custody of California Department of Corrections and Rehabilitation ("CDCR") in 1995. (Doc. 66-4, Exh. A (Deposition of Quincy Sims), 7:15-8:6.) At all times relevant to the events alleged in the complaint, Plaintiff was housed at Kern Valley State Prison ("KVSP"). (Sims Depo., 9:16-20.) Defendant worked in Facility A at KVSP as the "Detached Duty Acting Captain" at all times relevant to the events alleged in the complaint. (Doc. 66-4, Exh. B (Defendant's Responses to Plaintiff's Interrogatories, Set One).)

When Plaintiff first entered CDCR's custody in 1995, he asked to be housed with "Blood" affiliated or associated inmates. (Sims Depo., 57:12-16.) Plaintiff became a member of the Nation of Islam in 2005 and in 2009 he converted to Islam. (*Id.*, 13:9-14:15.)

Plaintiff was assigned to live in Facility A, Building 3, cell 102 with inmate Nathan Macon (H-11864) on October 15, 2011. (Doc. 66-4, Exh. D (Plaintiff's Offender Cellmate History ("Cellmate History")), p. 1.) Plaintiff and Macon lived together until June 8, 2012. (*Id.*, p. 1.) Plaintiff believed Macon to be a Blood-affiliated inmate. (Sims Depo., 35:3-8.) Plaintiff told Macon that he was no longer a Blood, did not want to be involved in any Blood-related business, and was Muslim. (*Id.*, 35:16-21.) Macon was agreeable to this, and for approximately eight months Plaintiff and Macon lived together, got along, and did not have any disagreements. (*Id.*, 35:1-36:2.)

On June 8, 2012, Macon was removed from their shared cell by KVSP staff for an unknown reason. (*Id.*, 39:1-10.) When staff returned Macon to their shared cell, Plaintiff was ordered to "cuff up" so that Macon could reenter the cell. (*Id.*, 39:1-14.) Staff then allowed Macon, who was also handcuffed, to enter the cell. (*Id.*, 40:15-18.) After closing the door, Macon's handcuffs were removed. (*Id.*, 40:19-41:2-3.) Before staff could remove Plaintiff's handcuffs, Macon attacked him, and Plaintiff was unable to defend himself because his hands remained handcuffed behind his back throughout the attack. (*Id.*, 41:4-43:17.) Plaintiff does not

2

remember how the attack concluded because he lost consciousness, but does recall receiving medical treatment. (*Id.*, 43:18-44:25.) Macon was moved out of cell 102 after the attack and Plaintiff did not receive another cellmate until he transferred to Centinela State Prison. (Cellmate History, pp. 1-2.)

Prior to the attack on June 8, 2012, Plaintiff had no reason to believe Macon wanted to cause him harm or would attack him. (Sims Depo., 36:8-12; 40:10-13.) Had he feared Macon wanted to harm him, Plaintiff would have notified staff and asked for a cell move; Plaintiff had no warning prior to the attack that it was going to happen. (*Id.*, 36:8-37:2.) Plaintiff did not request a cell move or request not to be housed with gang members prior to June 8, 2012. (*Id.*, 37:22-38:2.) Plaintiff does not know why Macon attacked him, but believes Macon may have attacked him because of Macon's affiliation or association with the Bloods. (*Id.*, 48:7-8; 48:22-49:14.)

Plaintiff has never met Defendant and knows "nothing" about him. (*Id.*, 31:8-15.) Plaintiff only knows Defendant to be the "yard captain" based on what other CDCR staff members told him. (*Id.*, 30:20-31:7.) Defendant was not involved in any way with Macon's June 8, 2012 attack on Plaintiff. (*Id.*, 42:1-12 (testifying that Defendant "don't have . . . nothing to do with the attack" and that "[t]he only thing that involved [Defendant] is after the attack").) However, Plaintiff sued Defendant based only on factual allegations arising after Macon attacked him on June 8, 2012. (*See* Am. Compl.)

Plaintiff never wrote any letters or sent any GA-22s[2] to Defendant prior to the attack on June 8, 2012. (*Id.*, 31:16-25.) The first interaction Plaintiff had with Defendant was after the attack, when he sent him a GA-22 asking for a cell move because he felt he could no longer safely be housed with Blood inmates. (*Id.*, 30:15-21, 31:21-32:8, 45:24-46:6.) Plaintiff would prefer to live with other Muslim inmates because he wants to "be around people that practice the same laws as [him] according to his religion." (*Id.*, 48:4-6.)

Plaintiff addressed the GA-22 to Defendant and delivered it to staff "during nighttime mail pickup" in his housing unit. (*Id.*, 47:3-7.) Plaintiff does not know whether Defendant actually

---

[2] A GA-22, also known as a CDCR Form 22, is an informal way for an inmate to resolve an issue with staff. Cal. Code Regs., tit. 15, § 3086.

received the GA-22; he assumes it must have been delivered to Defendant because "[i]f I give it to custody and it's addressed and it's in the institutional mail, that's all I can do." (*Id.*, 47:16-17.) Defendant has no recollection of receiving a GA-22 from Plaintiff or hearing that Plaintiff had any safety concerns, and is not aware of any in-cell attack on Plaintiff. (Def.'s Resp. to Int., 2:23-3:3, 6:23-25, 9:8-9.)

**B.     Administrative Exhaustion**

Plaintiff is "very" familiar with the prison grievance process. (Sims Depo., 52:5- 6.) On June 20, 2012, Plaintiff claims he sent Defendant an inmate appeal based on Defendant's failure to respond to the June 8, 2012, GA-22. (Sims Depos., 31:21-25.) However, between June 8, 2012, when Macon attacked Plaintiff, and November 21, 2012, when Plaintiff filed his complaint, there is no record that Plaintiff submitted any appeal for a third level review that was accepted or screened out. (Voong Decl., 3:14-21; Exh. A (Inmate/Parolee Appeals Tracking System - Level III record ("IATS III")).)

In November 2013, Plaintiff initiated an appeal regarding being the victim of an in-cell attack on June 8, 2012. (Voong Decl., 3:22-4:2; Ex. B (log no. KVSP-13-03320).) Plaintiff claimed his life was in danger so long as he continued to be double-celled, and requested to be placed on single-cell status. (Log no. KVSP-13-03320, p. 4.) Attached to the appeal and responses is a report documenting the June 8, 2012, attack. (Voong Decl., 3:27-4:1.) Defendant is not named in the November 2013 appeal. (*Id.*, at 4:1-2; IATS III.) The November 2013 appeal was administratively exhausted on April 15, 2014 (Voong Decl., 4:1-2), nearly two years *after* Plaintiff initiated this lawsuit.

### III.     SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Washington Mutual Inc. v. U.S.*, 636 F.3d 1207, 1216 (9th Cir. 2011). An issue of fact is genuine only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party, while a fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Wool v. Tandem Computers, Inc.,* 818 F.2d 1422, 1436

(9th Cir. 1987). The Court determines only whether there is a genuine issue for trial and in doing so, it must liberally construe Plaintiff's filings because he is a *pro se* prisoner. *Thomas v. Ponder*, 611 F3d 1144, 1150 (9th Cir. 2010) (quotation marks and citations omitted).

Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1) (quotation marks omitted). Plaintiff bears the burden of proof at trial, and to prevail on summary judgment, he must affirmatively demonstrate that no reasonable trier of fact could find other than for him. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). Defendant does not bear the burden of proof at trial and in moving for summary judgment, he need only prove an absence of evidence to support Plaintiff's case. *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010).

In judging the evidence at the summary judgment stage, the Court does not make credibility determinations or weigh conflicting evidence, *Soremekun*, 509 F.3d at 984 (quotation marks and citation omitted), and it must draw all inferences in the light most favorable to the nonmoving party and determine whether a genuine issue of material fact precludes entry of judgment, *Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*, 657 F.3d 936, 942 (9th Cir. 2011) (quotation marks and citation omitted). Inferences, however, are not drawn out of the air; the nonmoving party must produce a factual predicate from which the inference may reasonably be drawn. *See Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898 (9th Cir. 1987).

Further "[a] verified complaint may be treated as an affidavit to oppose summary judgment to the extent it is 'based on personal knowledge' and 'sets forth specific facts admissible in evidence.'" *Keenan v. Hall*, 83 F.3d 1083, 1090 n.1 (9th Cir. 1996) (quoting *McElyea v. Babbitt*, 833 F.2d 196, 197-98 n. 1 (9th Cir. 1987) (per curiam)), *amended by* 135 F.3d 1318 (9th Cir. 1998); *see also Jones v. Blanas*, 393 F.3d 918, 922-23 (9th Cir. 2004); *Lopez v. Smith*, 203 F.3d 1122, 1132 n. 14 (9th Cir. 2000) (en banc); *Schroeder v. MacDonald*, 55 F.3d 454, 460 (9th Cir.

1995); *Lew*, 754 F.2d at 1423.  If Plaintiff states that the facts in the complaint are true under penalty of perjury, the pleading is "verified."  *Schroeder*, 55 F.3d at 460 n.10.  A prisoner proceeding *pro se* is entitled to liberal construction of his filings.  *Thomas*, 611 F.3d at 1150 (citations omitted).

## IV.   DISCUSSION[3]

### A.   There is No Genuine Issue of Material Fact as to Whether Defendant Was Deliberately Indifferent within the Meaning of the Eighth Amendment

Summary judgment is appropriate on the merits of Plaintiff's claim.  Plaintiff alleges that he was assaulted by his cellmate for unknown reasons while he was handcuffed in his cell.  Plaintiff believes the attack may have been motivated by his disassociation with the Bloods gang and conversion to Islam.  Over a year after the attack, Plaintiff filed his November 2013 appeal form stating he was no longer a gang affiliate and did not want to be housed with gang members.  (Voong Decl., Ex. B, pp. 3-4.)  Plaintiff requested to be housed with Nation of Islam Muslim inmates rather than gang-affiliated inmates.  (*Id.*)  Plaintiff alleges that Defendant failed to take action to protect Plaintiff despite being placed on notice by Plaintiff that the gang-related "misinformation" was endangering his safety and that Defendant's failure to respond violated his Eighth Amendment right to personal safety.  (Am. Compl.)

The Eighth Amendment protects prisoners from inhumane methods of punishment and from inhumane conditions of confinement.  *Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th Cir. 2006).  Although prison conditions may be restrictive and harsh, prison officials must provide prisoners with food, clothing, shelter, sanitation, medical care, and personal safety.  *Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994) (internal citations and quotations omitted).

In *Farmer*, the Supreme Court made clear that there is a governmental obligation to "protect prisoners from violence at the hands of other prisoners," and that the assault of one inmate by another can violate the Constitution.  *Id.* at 833.  Prison officials have a duty to take reasonable steps to protect inmates from physical abuse.  *Id.*; *see also Hearns v. Terhune*, 413 F.3d

---

[3] The Court notes that Defendant also requests summary judgment based on Plaintiff's failure to exhaust and on qualified immunity.  These arguments need not be reached since Defendant's argument for summary judgment based on the failure to state an Eighth Amendment claim is dispositive.

1036, 1040 (9th Cir. 2005). The failure of prison officials to protect inmates from attacks by other inmates may rise to the level of an Eighth Amendment violation where prison officials know of and disregard a substantial risk of serious harm to the plaintiff. *E.g.*, *Farmer*, 511 U.S. at 847; *Hearns*, 413 F.3d at 1040.

To be deliberately indifferent, the defendants must "know" of the risk to the plaintiff but be indifferent and unresponsive to it. *Farmer*, 511 U.S. at 842. "[D]eliberate indifference entails something more than mere negligence . . . [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id*. at 835. In sum: the prison official must know of and disregard an excessive risk to inmate health or safety.

This is a subjective test which is met if the defendant is shown to be aware of the risk to the inmate and then fails to respond to it. *See, e.g., Allen v. Sakai*, 48 F.3d 1082, 1087 (9th Cir. 1994), *cert. denied*, 514 U.S. 1065 (1995) (to establish liability for deliberate indifference to the safety of inmates, an inmate must show that there was a sufficiently serious risk of harm and that prison officials knew of the risk of harm); *Fisher v. Stewart*, 37 Fed. Appx. 947 (9th Cir. 2002) (prison official was not deliberately indifferent to inmate's safety where official did not learn until afterward of a substantial risk of harm to the inmate); *Estate of Ford v. Ramirez-Palmer*, 301 F.3d 1043, 1052 (9th Cir. 2002) (prison officials did not violate plaintiff's Eighth Amendment rights by celling him with inmate who had an "extraordinary history of violence" because the two inmates were previously housed together without incident and the cellmate had not recently acted aggressively toward others); *Hearns*, 413 F.3d 1036 (inmate's pro se complaint sufficiently alleged facts detailing religiously motivated violence to state § 1983 claim that prison officials failed to protect him from attacks by other inmates in violation of his Eighth Amendment rights; inmate alleged that officials knew that numerous Muslim inmates had been subject to attack by ruling Muslim group in chapel); *Byerly v. Deputy Warden* (9th Cir. 2007) 246 Fed. Appx. 512 (assuming attack on inmate by fellow prisoners constituted a significantly serious deprivation of inmate's rights, there was no evidence that acting director of the Arizona Department of Corrections was aware of likelihood of attack, after prisoner sought and was denied placement in

protective segregation because he was a sex offender).

It is undisputed that the first time Plaintiff informed any prison official that he felt unsafe or uncomfortable with any member of any gang or religion was <u>after</u> the attack on June 8, 2012. Plaintiff testified, under oath, that prior to the attack he had no reason to believe his cellmate wanted to cause him harm or would attack him for any reason. (Sims Depo., 36:8-12; 40:10-13.) Plaintiff unambiguously testified that not only did he not request a cell move or request not to be housed with gang members prior to the attack (*see id.*, 37:22-38:2), but that had he feared his cellmate wanted to harm him for any reason, he would have notified staff and asked for a cell move. (*Id.*, 36:8-37:2.) Plaintiff testified he did not do so because he had <u>no warning</u> prior to the attack that it was going to happen. (*Id.*) If Plaintiff had no warning -- not even a subjective fear of potential harm or threat -- prior to the attack on June 8, 2012, it follows that prison officials were not on notice that such a threat existed. *See Jones v. Marshall*, 459 F. Supp. 2d 1002, 1010-11 (E.D. Cal. 2006).

Plaintiff has neither produced nor identified any evidence whatsoever that Defendant had a sufficiently culpable state of mind to meet the deliberate indifference standard under the Eighth Amendment. *Farmer*, 511 U.S. 825. There is no evidence that Defendant had actual knowledge, could have inferred, or could have other known that Plaintiff's cellmate posed a substantial risk of harm to Plaintiff.

In his opposition, Plaintiff restates his contention that Defendant failed to protect him from future harm by failing to respond and return his inmate grievance GA-22. (Doc. 70.) However, it is undisputed that Plaintiff did not create his GA-22 -- regardless of whether Defendant actually received it at all or received it and ignored it entirely -- until *after* the attack on June 8, 2012. (Sims Depo., 30:15-17, 31:13-24; 45:24-46:6.) As discussed above, Plaintiff offers no evidence demonstrating he was in fear for his safety prior to June 8, 2012, or that Defendant knew, or should have known, of the possibility of that specific harm to Plaintiff. The evidence shows, at most, that Plaintiff had a generalized fear for his safety *after* the June 8, 2012, attack. There is no evidence that Plaintiff had known enemies at KVSP and no evidence that the cellmate who attacked Plaintiff was a known enemy; in fact, the evidence overwhelmingly demonstrates that

Plaintiff and his attacker lived together agreeably for the eight months prior to the June 8, 2012, attack. (*Id.*, 35:1-36:2; 36:8-12; 40:10-13.) There is absolutely no evidence that Defendant was deliberately indifferent to any threat to Plaintiff's life or safety.

Accordingly, it is RECOMMENDED that Defendant's motion for summary judgment be granted on Plaintiff's claim for violation of the Eighth Amendment.

## V.    CONCLUSION AND RECOMMENDATION

Accordingly, for the reasons set forth herein, IT IS HEREBY RECOMMENDED that:

1. Defendant's motion for summary judgment be GRANTED; and
2. Judgment be entered for Defendant.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within **thirty (30) days** after being served with these Findings and Recommendations, the parties may file written objections with the Court. Local Rule 304(b). The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **May 19, 2016**                                        /s/ *Sheila K. Oberto*
                                                                                    UNITED STATES MAGISTRATE JUDGE